IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MARK J. WATSON | ) | |
| | ) | |
| V. | ) | 3-04-CV-2291-H |
| | ) | |
| ELECTRONIC DATA SYSTEMS CORPORATION, ET AL | ) | |

REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Pursuant to the District Court's order filed on November 15, 2004, and the provisions of 28 U.S.C. § 636(b) on May 17, 2005, came on to be heard Defendant Electronic Data Systems (EDS)'s Motion to Dismiss filed on December 13, 2004, Defendants United States Department of Labor, United States Department of Homeland Security and United States Department of States (the Federal Defendants)'s Motion to Dismiss filed on February 25, 2005, Plaintiff's Motion for Sanctions filed on March 30, 2005, and EDS's Response and Cross-Motion for Sanctions filed on April 19, 2005, and having considered the relevant pleadings and the statements of counsel for Defendants,[1] the magistrate judge finds and recommends as follows:

FINDINGS AND CONCLUSIONS:

Background of the Dispute: Based upon the statements of counsel for EDS, and other information contained in the pleadings filed in this action and in the parties' appendices, it appears that Mark J. Watson was an employee of EDS until on or about June 25, 2002. According to EDS

[1]The hearing was set pursuant to the magistrate judge's notice letter dated April 21, 2005. However, the court did not require the appearances of Plaintiff or counsel for Defendants. Mr. Watson did not appear or present argument with respect to the Defendants' motions to dismiss or his motion for sanctions.

he was terminated as a result of a reduction-in-force. Watson on the other hand contends that he was discharged to create a vacancy to be filled by less qualified H-1B nonimmigrant worker.[2]

Statement of the Claims: In his complaint Watson alleges that he was discharged from his employment so that EDS could hire a less qualified H-1B nonimmigrant worker and that EDS filed a false application to obtain H-1B status for the nonimmigrant with the Secretary of Labor. Watson filed a complaint with the Wage and Hour Division of the Department of Labor contesting the validity and veracity of EDS's H-1B application which he claims was not timely addressed and which was improperly denied. He makes a conclusory claim alleging that the Wage and Hour Division is systematically granting H-1B applications submitted by employers to the detriment of native born American workers. As relief it appears that he seeks damages based upon EDS's alleged false application for H-1B status of a nonimmigrant worker and a declaratory judgment invalidating all alien labor certifications and the immediate removal of all H-1B nonimmigrant workers from the United States. He alleges that this court has jurisdiction over his claims pursuant to the Administrative Procedure Act (5 U.S.C. § 701 et seq.).

Findings and Conclusions: In its brief in support of its motion to dismiss EDS primarily relies on the disposition of two complaints which Watson filed with the United States Department of Labor's Wage and Hour Division Administrator. The magistrate judge will address this issue below. However, to the extent that Watson seeks to recover any damages against EDS, it is quite clear that the Immigration and Nationality Act and, specifically, 8 U.S.C. § 1182(n) does not create a private cause of action on behalf of an employee who allegedly was terminated in favor of the

---

[2]There is no indication in the record before the court that Watson filed a timely complaint with the Equal Employment Opportunity Commission (EEOC) alleging that his discharge was the product of unlawful discrimination.

employment of H-1B nonimmigrant employees, whose status was obtained by means of a fraudulent application. E.g. see Shah v. Wilco Systems, Inc., 126 F.Supp. 2d 641, 647 (S.D. N.Y. 2000). [3]

Title 8 U.S.C. § 1182(n) provides a comprehensive procedure under which an employer may apply for an H-1B nonimmigrant visa as well as a regulatory enforcement scheme providing for investigations and remedial actions. Pursuant to this statutory scheme, regulations have been adopted to implement the administration of H-1B applications. See 20 CFR §§ 655.700 et seq., Subpart H - Labor Condition Application and Requirement for Employers Using Nonimmigrants on H-1B Visas in Speciality Occupations and as Fashion Models. Both the statute, § 1182(n)(2)(A) and more specifically 20 C.F.R. § 655.806 describe the specific procedures to be followed by an "aggrieved party." It is undisputed that Watson is an "aggrieved party" as defined in § 655.715, subpart (1).

The procedural history of Watson's initiation of complaints is summarized in EDS's brief filed in support of its motion to dismiss at pages 2-3. Specifically he filed an initial complaint with the Department of Labor's Wage and Hour Division Administrator on or about June 16, 2003, alleging that EDS committed immigration fraud by violating 20 C.F.R. §§ 655.738 and 655.739 (h)

---

[3]As the court noted in Shah, " a private right of action does not exist 'unless congressional intent can be inferred from the language of the statute, the statutory structure or some other source' Karahalios v. National Federation of Federal Employees, 489 U.S. 527, 532-33, 109 S.Ct. 1282 (1989) (citing Thompson v. Thompson, 484 U.S. 174, 179, 108 S.Ct. 513 (1988) (noting that congressional intent is the Court's 'focal point' in determining whether to infer a private cause of action from a federal statute). As the Supreme Court has stated in cases, '[i]n the absence of strong indicia of contrary congressional intent, we are compelled to conclude that Congress provided [in the statute] precisely the remedies it considered appropriate.' Id. (Citing Middlesex County Sewage Authority v. National Sea Clammers Association, 453 U.S. 1, 15, 101 S.Ct. 2615 (1981)." 126 F.Supp. 2d at 647.

Congress has provided numerous statutory remedies for prospective and terminated employees, who are subject to discrimination. E.g. The Civil Rights Action of 1964, as amended. However, none of these statutes are before the court in this action.

and (j). His second complaint, filed on or about December 3, 2003, essentially reiterated the grounds asserted in his initial complaint. In neither instance did the Administrator conduct an investigation of his complaints. Despite the undisputed fact that no investigations were authorized, for reasons which do not appear in the record before the court, Watson obtained hearings before administrative law judges (ALJs).[4] In both instances rulings in EDS's favor were entered. See EDS's Appendix at Exhibits 1 and 2. Thereafter Watson petitioned the Department of Labor's Administrative Review Board (ARB) for review of the adverse decisions, and on May 31, 2005, the ARB issued its order dismissing his complaints against EDS and a third complaint against Bank of America (See Attachment 1).

Federal court jurisdiction: Watson invokes federal court jurisdiction pursuant to 8 U.S.C. § 1182(n) of the Immigration and Nationality Act and the Administrative Procedure Act (APA) (28 U.S.C. § 701 et seq.).

As noted above, § 1182 (n) does not create a private cause of action on behalf of an "aggrieved party" as defined by 20 C.F.R. § 655.715, subpart (1). Therefore Defendant EDS is entitled to judgment dismissing Plaintiff's claims against the EDS pursuant to Rule 12 (b)(1) and (6).

Although Defendants do not directly question this court's jurisdiction to review a final agency action by the Department of Labor under the APA, this court has an obligation to independently satisfy itself that it has jurisdiction to act. E.g. see Bender v. Williamsport Area School District, 475 U.S. 534, 541, 106 S.Ct. 1326 (1986).

[4]One of the ALJs specifically found no jurisdiction to entertain Watson's complaint because the Administrator never conducted an investigation. See Defendant EDS's Appendix at 08-10.

Not all actions by agencies of the executive branch are subject to judicial review. Although there is a presumption in favor of judicial review of final agency decisions, this presumption may be overcome by inferences of intent drawn from the statutory scheme as a whole. See Block v. Community Nutrition Institute, 467 U.S. 340, 349, 104 S.Ct. 2450, 2456 (1984).

The primary purpose of § 1182(n) is to permit an employer to obtain H-1B nonimmigrant status for alien employees under carefully prescribed circumstances. To insure that applications for H-1B nonimmigrants are in compliance with the requirements of § 1182 (n)(1)(A), (B), (E), (F) and (G), the statute additionally provides means whereby a source may submit information which contradicts or questions the information contained in an H-1B application. The obvious purpose for allowing such information to be submitted is to insure the integrity of and to curb any abuses of the H-1B program. However, § 1182 (n)(2)(G)(i) reserves to the Secretary the determination of whether the information provides reasonable cause to believe that the applicant employer has engaged in a willful failure to meet the requisite requirements of an H-1B application or that the employer has engaged in a pattern or practice of failure to meet the requirements.

The statute provides further procedures which the Secretary is to follow, but only in the event that an investigation has been authorized. See § 1182 (n)(2)(G)(ii)-(vii). The applicable regulations track the requirements of the statutory provisions. See 20 C.F.R. § 655.806. Who may file a complaint and how it is processed? Subpart (a)(2) states in pertinent part that: "No hearing or appeal pursuant to this subpart shall be available where the Administrator [of the Wage and Hour Division, Employment Standards Administration] determines that an investigation on a complaint is not warranted."

Finally, the court looks to the remedies provided for violations. All of the sanctions are directed against the employer that submitted the application, after a determination that a substantial failure to meet the requirements occurred or that the application contained a misrepresentation of material fact. See 8 U.S.C. § 1182 (n)(2)(C).

The statute clearly reserves to the Secretary the initial determination of whether the contents of a complaint contain sufficient information to provide "reasonable cause to believe" that a violation has occurred. The use of the term "reasonable cause" without any attempt to define the term makes clear that Congress gave discretionary authority to the Secretary to decide when and if an investigation should be conducted. The broad discretion granted by the statute is analogous to the unfettered discretion reserved to the Department of Justice in determining whether criminal charges should be sought. The analogy become even stronger in light of the fact that the only sanctions, when violations have been found, are imposed against the offending employer. See also Heckler v. Chaney, 470 U.S. 821, 831, 105 S.Ct. 1649, 1655 (1985), where the Supreme Court reiterated that "This Court has recognized on several occasions over many years that an agency's decision not to prosecute or enforce, whether through civil or criminal process, is a decision

generally committed to an agency's absolute discretion. (Citations omitted)."[5]

Watson's Original Motion for Sanctions: In his motion Watson accuses EDS's counsel of making false statements in a labor condition application (LCA) in order to obtain an H-1B nonimmigrant worker visa, "blacklisting" him from obtaining employment in the information technology industry for a period of one year and further accuses EDS's counsel of asserting a fraudulent defense in this judicial action.

He further accuses the Federal Defendants' counsel of having failed to file a certified copy of prior administrative proceedings and in moving to dismiss this action for failure to exhaust administrative remedies.

In its response to Watson's motion, EDS seeks an award of attorney's fees under the court's inherent authority. The District Court should refuse to impose sanctions under its inherent authority because the facts in the present action do not establish sufficiently egregious conduct on the part of Mr. Watson proceeding pro se to warrant such measures.

Watson specifically relies on Rule 11(b) and (c)(1)(A), Federal Rules of Civil Procedure, as a basis for his motion.[6]

---

[5]The magistrate judge's opinion that the Secretary's rejection of Watson's complaint is not subject to judicial review under the APA is buttressed by the absence of any case authority in my independent research which holds that the APA applies. The magistrate judge's opinion is further buttressed by the Administrative Review Board's decision issued on May 31, 2005 (See Attachment 1). I do note that the court in Shah v. Wilco, supra, suggests that upon exhaustion of administrative remedies, the plaintiffs in that case could seek judicial review, 126 F.Supp. 2d at 648. However, the facts recited showed that the plaintiffs had not even pursued administrative remedies, nor did the court undertake to address the Secretary's initial authority in determining whether "reasonable cause" existed. As such, the court's suggestion is mere dictum.

[6]The other rules cited in Watson's motion are irrelevant and inapplicable.

Rule 11 (b) imposes an obligation on an attorney or a party with respect to pleadings filed in a civil action. Regardless of any ultimate outcome with respect to administrative proceedings which pre-dated the filing of this action, such conduct or representations do not come within the purview of Rule 11 since they do not constitute pleadings filed in a federal district court.

Rule 11(c)(1)(A) sets out the procedural requirements which a party intending to seek sanctions under Rule 11 must follow. Among the requirements imposed is prior service of the motion on the alleged offending party at least 21 days prior to filing the Rule 11 motion in the pending action - i.e. the 21 day "safe harbor" provision. Watson represents in his motion that he spoke to counsel for Respondents on March 3, 2005, who indicated they opposed a motion for sanctions. See Original Motion for Sanctions filed on March 30, 2005, at page 3 "Certificate of Conference. The identities of the opposing counsel is not set out. More to the point, this conferring does not comply with the specific requirements of Rule 11 (c)(1)(A).

In addition, nothing identified in Watson's motion or in his reply or briefs establish a basis for finding that any opposing party violated Rule 11 (b).

Rule 11 (c)(1) provides in pertinent part that: "If warranted, the court may award to the party prevailing on the motion the reasonable expenses and attorney's fees incurred in ... opposing the motion." An appropriate sanction in this instance is an order awarding EDS its reasonable attorney's fees and expenses incurred in the preparation and filing of its opposition on April 19, 2005.

RECOMMENDATION:

For the foregoing reasons it is recommended that the District Court find that it has no jurisdiction to consider the actions of the Federal Defendants pursuant to the provisions of the

Administrative Procedure Act, and accordingly that it grants Defendants' motions to dismiss Watson's action with prejudice pursuant to Rule 12 (b)(1) and (6).

It is further recommended that the District Court deny Watson's Original Motion for Sanctions and grant EDS's cross-motion for attorney's fees and expenses incurred in opposing the said motion and that the same be referred back to the magistrate judge for determination of the amount of the monetary sanctions to be awarded.

A copy of the recommendation shall be transmitted to Plaintiff and counsel for the Defendants.

SIGNED this 7th day of June, 2005.

Wm. F. Sanderson, Jr.

WM. F. SANDERSON, JR.
UNITED STATES MAGISTRATE JUDGE

NOTICE

In the event that you wish to object to this recommendation, you are hereby notified that you must file your written objections within ten days after being served with a copy of this recommendation. Pursuant to Douglass v. United Servs. Auto Ass'n, 79 F.3d 1415 (5th Cir. 1996) (en banc), a party's failure to file written objections to these proposed findings of fact and conclusions of law within such ten-day period may bar a de novo determination by the district judge of any finding of fact or conclusion of law and shall bar such party, except upon grounds of plain error, from attacking on appeal the unobjected to proposed findings of fact and conclusions of law accepted by the district court.